Oh, and this is Fleischer v. Federal Express, and Mr. Barnack, are you ready to proceed? Please do so. Would somebody pull that door closed over there? Good morning, members of the court and counsel. Good morning. I'm Matthew Barnack, and with Mr. Goldenberg, I represent Inland Marketing Services. The corporate slogan of FedEx Corporation is the world on time. This is a breach of contract case about a shipment for Inland Marketing that was delivered beyond the guaranteed time commitment, and there is a putative class with 18 million late shipments during the one-year class period. FedEx has a variety of time-critical shipment options that it offers to customers. You can choose FedEx same day if you want to get the package there today. You can send it priority overnight or standard overnight if you want it there tomorrow, or you can send it FedEx today if you want it there the day after tomorrow, and there are some other options available as well. The shipment at issue for Inland Marketing was a standard overnight shipment, meaning it was to be delivered by 3 p.m. tomorrow, and, in fact, it wasn't delivered until the day after tomorrow on the morning of the second day. FedEx admits that shipment is late. That's not in dispute. The question is whether the contract remedy we base our claim upon applies to this type of delayed shipment. FedEx knows instantly when a shipment is late. It has an extensive computer system, and upon delivery, the data is entered, and they know instantly. But they don't do anything about it. They don't notify the customer. They don't refund the purchase price. They don't refund an overcharge. They leave it up to the customer to find out and pursue a claim. The case comes to this court in somewhat unique circumstances because we have not one but three trial judges who heard dispositive motions and issued rulings on the issues that are now before the court. Judge Barbara Crowder heard a motion to dismiss in 2007 and denied it with a written opinion explaining her reasons. Judge Daniel Stack then heard cross motions for summary judgment in 2010. He granted ours, denied FedEx's. His order is brief, but his rulings on the record are contained in the appendix. And then Judge Stack retired, and Judge William Mudge was appointed. FedEx filed a motion for reconsideration in front of Judge Mudge we think was an improper motion. There was no new law or new facts. The only thing new was the judge. Judge Mudge then ignored the law of the case and reversed both prior rulings granting FedEx's summary judgment motion. I'd like to frame the issue that I think is the core of the case on appeal here, and that is are there two contract remedies for a late shipment, or is there only one? Our claim from the beginning has been based upon an overcharge provision that is found in the service guide. We cite that in the record, and we attach part of it in the addendum. FedEx claims that another part of the contract, the money-back guarantee provision, is the exclusive remedy. And they rely heavily on Moody v. Federal Express Corporation, which came from this court. And I know Judges Donovan and Spomer were part of that panel. I'm here to tell you why Moody is different from this case. I'll just tell you that right now and then jump back into these two provisions. The reason Moody is different is that no one ever told before in Moody about the overcharge provision in the contract. The only contract provision that's discussed in the Moody case is the money-back guarantee. And so if that's the only remedy available, then, of course, it's the exclusive remedy. Mrs. Moody in that case alleged kind of a confusing claim. She said that the contract gave her a common-law remedy of overcharge, which doesn't make a lot of sense. And this court said, no, you're limited to the four corners of the contract, and then discussed the provision, the money-back guarantee provision. I think Judge Crowder said it best in her order. She said, quote, Moody holds plaintiff to the four corners of the contract and then only discusses the money-back guarantee section. It does not hold that plaintiff is limited to only that part of the contract. If it said that, the court would rule differently. Plainly, there is an overcharge provision in the FedEx Service Guide, and there was during the time of Moody, but no one told the court about it. And the overcharge provision is what we base our claim upon. The definition of an overcharge has three different phrases that fits our type of claim. It can be a charge based on an incorrect rate. That happened here with Inland because it was charged for a standard overnight rate when, in fact, the shipment was delivered as a FedEx 2-day. And I'll tell you that the Service Guide has a 40-page section talking about rates and how it calculates rates, different types of shipments, and different sizes of shipments. The overcharge provision also says a billing for the wrong type of service. That's probably another way of saying the same thing, but it applies in our case as well. We got billed for a standard overnight shipment when, in fact, what was delivered was the equivalent of a FedEx 2-day. And then an amendment to the overcharge provision added this very broad phrase, any billing that results in an incorrect charge. It's hard to imagine something more broad than that. We think that was intended to clarify that, in fact, yes, this overcharge provision is designed to cover this type of claim and give a customer two different alternative remedies. But it was that clause that caught Judge Stack's attention and he said, I can't grant summary judgment for FedEx with language like that. Now, there are, I've counted five different rules of contract interpretation that the court could apply that all lead to the same result, which is the conclusion that, in fact, this overcharge remedy is designed to cover our type of claim. I'll start with one that's based on contracts of adhesion that I think is best explained in the Abbott v. Amoco Oil case from, I think, the second district in 1993. And that rule says that, generally speaking, burdensome clauses in adhesion contracts should be construed against the more powerful party. It's similar to another rule that's more familiar, ambiguous phrases in a contract are construed against the drafter. But it's distinct because this rule says the provision is construed against you, not because you wrote it, but because you were the more powerful party in bargaining for the terms of the contract. And, in fact, this is a classic contract of adhesion and FedEx had absolute bargaining power over the terms of the contract. Customer comes in, selects a shipment. No matter what shipment you select, you're bound to those terms of the contract. You have no ability to negotiate the terms that will cover it. To construe this burdensome clause against FedEx in this case, the court should look at the money-back guarantee provision the way FedEx argues it and, I think, easily conclude that the overcharge provision should be considered a valid remedy. To comply with the money-back guarantee provision the way FedEx says it has to be done, Inland Marketing would have had to find out that the shipment was late on its own. FedEx doesn't tell them. Get a hold of the service guide, which, by the way, is in those binders on my desk. You have to take into account over 600 pages of service guide, addendum, rate section, worldwide directory. You don't have to read it all, but you have to sift through it and find out what applies to you. Then you have to determine which remedy is yours. Then you have to gather a bunch of information about your claim that FedEx already has, and you have to submit that in 15 days. Now, we believe that's unreasonably burdensome upon a customer when FedEx knows instantly that the shipment is late and takes no steps to notify the customer. But if you want to choose that money-back guarantee remedy, then you get your full purchase price back. It's a bigger margin. You pay 25 bucks, you get $25 back. The overcharge section is a different remedy that allows a longer time, one year, to make the claim. But your remedy is not the full purchase price back. It's the difference between what you ordered and what you got. So the contract is designed to provide those two different remedies. And construing this burdensome clause against FedEx leads the court to conclude that the overcharge provision is a valid remedy for Inland. There is also, I won't go through all five of those provisions or rules of construction, but they're in the brief. There is also, from the Hicks case, language that says, Exclusive remedy provisions are not favored and must be strictly construed against the benefiting party. Strictly construe this provision against FedEx would lead the court to the same conclusion. Now, there's a part of the overcharge provision that FedEx relies on heavily. There's a sentence that says, essentially, for service failures, see money back guarantee. And they want to say that seals it up. That makes it crystal clear that the money back guarantee is the exclusive remedy for late shipments. There are a couple of problems with that. One is that they're asking the court to add words that aren't in that phrase. And they had total control. They wrote every word of this contract. But the Gallagher case that we cite says, A presumption exists against provisions that easily could have been included in the contract but were not. If FedEx really meant the money back guarantee to be an exclusive remedy, that would have been the perfect place to say it. The money back guarantee is the exclusive remedy or the only remedy or the sole remedy. Anything like that to say that's the only way you have a remedy for a late shipment. What they did was essentially a see also reference. If you read the service guide, you're going to come to the overcharge provision first. And the money back guarantee doesn't come until about 10 pages later. And so this provision is telling a customer, if they're reading the contract, there's another one you might want to consider as well. Now, there are, let me go to actually another rule of interpretation because I want to address something that one of the trial judges said. I mentioned it already, but if there is an ambiguous phrase, that is construed against the drafter. Our view is the overcharge provision is not ambiguous. Those words, when even reasonably interpreted, certainly when broadly interpreted, cover our kind of claim. And that, we think, is easy to find without concluding that there's an ambiguity. Certainly FedEx claims they have a different meaning. And so if the court finds that those two urged interpretations are both tenable, then that's an ambiguity. And if so, that needs to be resolved by construing it against FedEx and in favor of Inland and allowing the overcharge claim to stand with a reversal and remand for further proceedings. Now, Judge Stack said something about that in his ruling. He thought that there was an ambiguity in that provision. He didn't exactly explain what he thought was an ambiguity, but that's what he thought. Nevertheless, his ruling for us was the shipment is late. That's plainly a breach of contract. I'll leave it to another day to determine what remedy is or is not available for that breach of contract. The FedEx brief raises a few other issues, and I'll mention next the timeliness issue, which is one that they seem to rely heavily upon as well. The complaint was originally filed by Stephen Fleischer in September 2001. Inland joined as an additional class representative in February 2003, a little less than 18 months later. Mr. Fleischer's claims were ultimately dismissed in 2010. FedEx now argues Inland's claim is itself untimely because it was brought, it did not join as a party plaintiff until more than a year after the case was originally filed. We had three arguments to address that. One is certainly the tolling provision that goes back to Steinberg. When a class action is filed, the statute of limitations is told then for all members of the class. It's clear that Inland was a member of that class. Inland's late shipment was about five weeks before the case was originally filed. They then say, no, no, you have to look at Hess versus IRE real estate because Fleischer didn't have standing to bring his claims, and Hess says there's no tolling if there's no standing. The flaw in that, the first flaw, is that FedEx never alleged that Fleischer had standing, had a standing issue until October of 2010. Even in their motion for summary judgment filed in July 2010, they didn't say he lacked standing. They just said his shipments were not late, as it turns out. But Hess doesn't say what they say it says. Hess was a case where the plaintiff filed claims against 16 different defendants, and yet Martha Hess only had dealings with one of those defendants. When her claims were dismissed, another plaintiff or set of plaintiffs joined later, and the court said, no, her initial filing didn't toll for claims as against the other 15 defendants that she had no dealings with, only against the one that she did have dealings with. That's not our case at all. It's clear that Mr. Fleischer filed his case based upon shipments that he shipped through FedEx. Not somebody else's shipments. These weren't claims that he didn't own. He filed them, and, excuse me, he sent the shipments, and then he filed the case. As it turns out, yes, ultimately his claim was dismissed. But it's curious that it took that long for FedEx to file a motion for summary judgment, and even when they filed it, they didn't make the standing argument. They didn't do that until we stood up at the hearing in front of Judge Shack in October of 2010. There is a case from the Seventh Circuit that is instructive, the Robinson v. Sheriff of Cook County that says the fact that the named plaintiff in a class action turns out not to have a meritorious claim does not doom the class action. If the class representative's claim is ultimately rejected on the merits, the class action may be preserved by the appointment of a new class representative. And that's exactly what's happened here. The motion to amend was filed. FedEx objected. Judge Cardus granted it over that objection. When Judge Stack looked at this, he said it was timely because of the tolling rule. It was timely because it would have relayed it back. And he said it was timely all the way around. Judge Mudge, interestingly, did not address anything about timeliness or standing. He focused his ruling solely on Moody. There are also claims about the Airline Deregulation Act and preemption. That was an issue in Moody but not directly addressed. Judge Donovan's special concurrence addressed it. But it's a straightforward issue here. One of the leading cases in the country came up from Illinois. It was Wallens v. American Airlines that went to the U.S. Supreme Court. And it makes very clear that filing suit on a breach of contract that's privately entered with the air carrier is not preempted by the Airline Deregulation Act. That's what we have here. FedEx takes a little bit of a confusing position on that. They want to say, okay, a pure breach of contract claim is not preempted. We get that. But the court can't use these other rules of law that would be necessary to decide a breach of contract case like the tolling provision, like finding a provision is procedurally unconscionable. They say you can't do all that, which really hamstrings the court. The court has to be able to afford relief. That's the phrase from Wallens. And the Airline Deregulation Act does not preclude the court from affording relief on a breach of contract claim. If the court has no other questions, I'll reserve the rest for rebuttal. Thank you. When you're ready, proceed. Thank you, Your Honor. May it please the court that the trial be over. Your Honor, this case is and always will be about a late delivery. Because it's a case about a late delivery, this court's guidance and mooting should dictate and should result in the firmness of the judge's decision in the trial court. Rather than accept the money-back guarantee, which I should note, you can get with a phone call to a phone number, 1-800-GO-FEDEX. You can make a claim for a money-back guarantee for a full refund, initiating it with a phone call to an 800 number. The plaintiffs have chosen to disregard or not take advantage of that money-back guarantee and instead seek a partial refund, a retroactive partial refund, which was precisely what this court moody said was not contained or provided for in the contract. Now, understandably, they have to try to find a way to avoid the moody decision. There's no question about that. And Mr. Barnick has correctly said that he is relying upon the overcharge provision. The problem with the overcharge provision, Your Honor, is that it is both unambiguous and irrelevant. The contract, the overcharge, says a charge based upon an incorrect rate, incorrect special handling, billing for the wrong type of service, or any billing that results in an incorrect charge. But, Your Honors, it's the plaintiff who chooses the level of service. It is the plaintiff who, when they fill out that error bill, and there are five or six different options, the plaintiff chooses that level of service. So, there is no misspelling or incorrect billing. The billing is in accordance with what the plaintiff has chosen when the error bill is filled out. And that, of course, is when the contract is made. Now, most significantly, Your Honor, overcharge is defined in paragraph four, and that's in our appendix. Let me just get this. Overcharge is defined in our appendix. At paragraph four. Also, at page A28, Your Honor, which is the amendment. What's the appendix page? A28, Your Honor. And then, that's the definition of an overcharge. And then the very next paragraph, that, Your Honor, is an amendment. So, the very next paragraph, though, of the contract is found at A8. Paragraph five. And it says, And this, Your Honor, is exactly what Judge Mudge noted when he said in his decision that the money back guarantee was the exclusive remedy. He did not find that the overcharge provided an additional remedy. Indeed, Your Honor, overcharge provision says nothing about timeliness of delivery. It doesn't even mention anything about time. So, is it all or nothing? There is no provision in the contract for an adjustment. You either get all your money back or you get no money back. No, for a late delivery, Your Honor, the exclusive remedy is the money back guarantee. And if you have sustained actual damages, you can make a claim for actual damages. But for the late delivery with no damages, the exclusive remedy is the full refund. Okay. So, there's no provision in the contract for getting less than the full refund. So, you have no consequential damages. Exactly. Now, they cite in their brief on page eight, and I don't know what portion of the contract it's from, but it's page eight of their brief, paragraph 39. The request must state the reason you believe an adjustment or refund is warranted. So, the word adjustment is used, which to me means less than a full refund. Maybe that's out of context, but to throw it on you, I don't know what portion of the contract we're in. Well, Your Honor, I think the clearest answer that I can give you is that if you go to the money back guarantee, it actually complements the overcharge provision. It says for service failure, you see the money back guarantee. And then when you go to the money back guarantee, it says at page A16, this money back guarantee does not apply to requests for invoice adjustments based on overcharges. So, these provisions are complementary. Judge Mutch did not rely upon the provision that's at A16, where we say the money back guarantee does not apply to requests for invoice adjustments based on overcharges. But clearly, we've got money back guarantee, excuse me, in the overcharge provision, it says for late delivery, you see the money back guarantee. That's what Judge Mutch relied upon. That, Your Honor, with all due respect, is very clear. But if you wanted to make it clear, and Federal Express did, when it talks about in the section about the money back guarantee, it says this money back guarantee does not apply to requests for invoice adjustments based on overcharges. So, they complement one another. It could not be clearer, Your Honor, that there is not a partial refund remedy that's being sought. So, the plaintiff's theory also fails, Your Honor, because in effect what's taking place is an effort to rewrite the contract after the delivery is made. Now, the contract is formed when the plaintiff fills out the box and chooses that level of service. And you can't simply rewrite or reprice this contract. Indeed, Your Honor, for the plaintiff's theory to succeed, this contract is good up until 60 seconds after the delivery. At that point, the plaintiff's theory is you would rewrite the contract or reprice the services. That just doesn't make any sense. And it makes no more sense than if that was true, then Federal Express could reprice or redraw the contract to charge an increased fee if it delivered a package early. That's not the contract. The contract is what was formed when the plaintiff selected the service level, and neither of us, we can't ask for more money for an early delivery, nor can they ask for less money if there's a late delivery. But I would say this, Your Honor, that the contracts have to be interpreted by all the typical rules of contract construction. Mr. Barnett spoke of some, certainly others that apply, which this Court recognized in Moody. This Court has also recognized in Hicks. You construe the contract as a whole. You give effect to every provision if possible. And you don't interpret a contract to render certain terms meaningless. If I could spend just a moment on this last part. You don't interpret contract terms to render them meaningless. Think of this. If the world were as the plaintiffs want it to be, there would never be a late delivery. You simply reprice or rewrite the contract at that point to the less expensive level of service. And there's no late delivery. And that simply can't be, can't construe the contract consistent with the rules of construction, which among other things is to render every term meaningless. It would effectively, if the world were as the plaintiffs want it to be, render all this language about claims for actual damages due to undue delay. It would render meaningless the language about service failures. It renders meaningless the language about money back guarantees for late delivery. It renders meaningless the deadlines for submission of the forms and the timeliness. And that's precisely what this Court in Moody and Hicks and legions of other cases have said you don't do. You read the entire contract, give full meaning to give full effect. And you can't do that and adopt plaintiff's term and then suddenly write out all these other provisions that relate explicitly to a late delivery. Now, Your Honor, even if the overcharge provision could somehow apply, there clearly are problems with both the notice and the timeliness. The content plaintiffs conceived is not satisfied by even the filing of the complaint. The timeliness is untimely. It was not filed within a year. It was filed 16 or 17 months later at the earliest with the filing of the complaint. We do take the position very clearly, Your Honor, that the Airline Deregulation Act of 1978 and the Bollings decision that interpreted it bars that kind of writing out of these limitations. The Airline Deregulation Act, Justice Ginsburg's opinion was very clear when she talked about carving out the exception from the express preemption provisions to say that she would permit a breach of contract action to enforce the private contract that the parties entered into. But what she said, she said, but the courts are confined, that was her word, in breach of contract actions to the parties' bargain with no enlargement or enhancement based upon state laws or policies external to the agreement. And that, in fact, is what the relief is, is to say to write out this one-year limitation provision on the basis that there's tolling, in fact, enlarges and enhances the contract undertakings that both Federal Express and the plaintiffs undertook. Mr. Fletcher's claims were addressed by Mr. Barney that, in fact, are flawed. He was never a member of the class that he purported to represent. He had no damages and thus he lacked standing. We've made those points clear, Your Honor, in our brief. But, again, you simply can't write out these limitations and be consistent with what the United States Supreme Court said with Justice Ginsburg's decision that you can't enlarge or enhance the contractual undertaking. The arguments about inconstability, I think, also merit a few comments. There are 22 pages to the terms and conditions. The argument was made, or the statement was made, well, some pages later, the money-back guarantee appears following overturn. It's a simple proposition. We organized it alphabetically. O comes, well, I think I got it backwards there, but it's organized alphabetically. The headings are bold-faced and you can simply follow through that way. The argument also fails, Your Honor, simply because the plaintiff's conduct belies the argument of inconstability. Their claim is that we should somehow use this overcharge provision to create a partial refund remedy. Well, in the very next paragraph is where the one-year limitation provision appears, where the notice contents appear. Indeed, it's where the money-back guarantee appears. So you simply can't adhere to the Kinkle versus singular rationale of what constitutes procedural unconscionability and reach the conclusion that this was hard to find. It's the same place that they used for their basis for their claim. Or that they didn't read it. It's the very next paragraph. Or that you couldn't understand it. It simply doesn't fit and their own conduct and their own claims would belie that kind of argument. Your Honors, also, there was, I think I need to clear up one thing that sometimes in the heat of arguments, things are misstated. I want to be very clear. Our motion to reconsider in front of Judge, that was heard by Judge Mudge, was filed in front of Judge Stack. We worked very hard to get it filed, heard by Judge Stack before he left the bench. The hearing was held on October 27th. He announced his rulings from the bench. He asked for a written order. We actually filed our motion to reconsider on the 15th of October. The written order didn't get entered until the 19th by Judge Stack. But because we were trying to get the motion to reconsider heard by Judge Stack before he left the bench, we filed the motion to reconsider before the written order was actually entered on the summary judgment. So, and in the end, Judge Stack simply didn't have the time. He was preparing and finishing off matters that he had taken under advisement. But we did not wait until Judge Mudge had taken the bench to file a motion to reconsider to have it heard. We worked very hard to fight for the contract. I guess I want to throw your argument off, but if I go into FedEx and I want FedEx standard overnight. Yes, sir. But they charge me for FedEx first overnight and they deliver it in accordance with FedEx first overnight. They deliver it on time in connection with the faster rate, but I'm charged more. Now, can I go in and ask for an adjustment down to what I originally intended to get? That's an overcharge. You should get, you should get the... You get all your money back or do you get an adjustment to a lesser amount? You get the adjustment because we charged you more than what you contracted for. You contracted for delivery at 3 o'clock the next day. And we made an error and we charged you for a delivery that was at 8.30 that morning. We were wrong. You should only have been charged for the 3 o'clock delivery, the lesser charge. If we charge you too much, you get a partial refund. Partial refund, okay. And to get that, you have to give notice within the 24 or 48 hours or seven days or is it within a year? It has to be within a year. Got it, okay. I follow. Okay, thank you. But that's not what we're talking about. I know. I got that on just one. All right, thank you. We're unclear whether the plaintiffs are continuing to pursue their claims for restitution or prejudgment interest or attorney's fees. Those were not raised in the initial brief. Our position is that those claims are waived. Nevertheless, they can't withstand the scrutiny of the Wollins decision and the ADA requirements. Those are expressly preempted because they go beyond the four corners of the agreement. They affect rates, files, and service. And indeed, that's exactly what Wollins says you cannot. Let me check my notes here for a moment. Mr. Southern, help me out. The overcharge is in the billing section which is why it's alphabetically before the money back guarantee. Billing, yep. Thank you, Your Honor. The fact is that the plaintiffs are trying to grasp on a section and misapply it. It's in the nature of trying to put that square peg into the round hole. The square peg doesn't fit.    into the round hole. The square peg doesn't fit. It's unambiguous. The court addressed the question of exclusiveness and Moody recognized that you didn't need to use the word exclusive in order to have an exclusive remedy. And we'd ask that Your Honor follow Moody and affirm judgment. Thank you. Thank you. Rebuttal? I ask you this. The definition of an overcharge, it appears that that applies to when you enter into the contract, not that you determine the overcharge when the delivery is made, that they overcharge you when you signed it up, like the example I just had. You ask for overnight standard and they charge you for overnight, you know, 8 a.m. And there is a difference and you get an adjustment back. You get part of your money back. But that was all because of an overcharge at the time you entered into the contract. Why wouldn't it be limited to that? I think it includes that, Your Honor. But the phrasing is simply broader than just that. It's billing, excuse me, a charge based on an incorrect rate. The rate becomes incorrect when they deliver at the wrong time. Not the rate they charge at the time. The rate they charge you is correct. The rate they charge me is correct according to what I wanted, but not according to what I got. But it became the wrong rate when they delivered it. Exactly. So are you relying on the last, the very last phrase or any billing that resulted in an incorrect charge? We also rely on that. I think that actually answers your question even better, Judge Donovan. That was the line. I see your point there. Any billing that results in an incorrect charge  I think that answers your question. How could our claim not fit within that definition? The billing we got was for standard overnight, but it was not correct because we didn't get a standard overnight shipment. We got a FedEx two-day shipment which cost less money. But at the time you paid the bill, it was correct. You paid for the service and you paid the bill later and paid for it later. I mean accounting-wise, but as we look at a contract, they're not sending it out unless they've got a way to get paid. Absolutely. So that's all correct at that time. There is no overbill. You're correct. It's not a clerical problem. It's not a data entry error. It is a delivery problem that makes the resulting bill a little more difficult to ask counsel, Judge Donovan, because respectfully, I don't think he answered it. You asked about the language that we cited in our brief. A request for invoice adjustment or refund must be in writing. You asked where does that appear in the contract. It's in the overcharge section. And if you look at our addendum, page A22, you'll see that. And I would also draw your attention to that. The very top says billing continued. Counsel just said overcharge provision is in the billing section, and that's correct. So if you look at the prior page, you'd see where it started. But the phrase you asked about is at the first of paragraph 3. And then the definition of overcharge is in paragraph 4. And I would also draw your attention to the amendment that was posted on the Internet after the fact. The amendment has the language that you asked about, Judge Chapman. Any billing that results in an incorrect charge. Mr. Barnack, I know neither side spent much time on the law of the case issue. Do you really think it could be handled under that area of the law? Well, I think it was a violation of the law of the case. There was something new. They did want to try and get it done in front of Judge Stack, and he just didn't have time before he left the bench. It ended up in front of Judge Mudge. But either way, someone had to find that there was something new that justified changing  but Judge Crowder's ruling. If you look carefully at Judge Stack's ruling, I mean, ultimately, it would come here anyway. So I'm not sure that it resolves the issue today, but I point that out because I think Judge Mudge's ruling comes under a little bit of suspect because it simply did not comply with law of the case requirements. And what you otherwise would be reviewing is Judge Stack's order, and the roles on appeal would be reversed. But ultimately, you asked about the adjustment. There are, again, 18 million shipments in the putative class that have not been adjusted. No overcharge has been refunded. That's what this case is all about in the broader perspective. But all those are based on late delivery. They are, and they're based on statistics that FedEx themselves produced saying these were all late during the one-year class period. The last thing is that counsel mentioned the Airline Deregulation Act. The problem, again, is that they want to say, okay, you have a breach of contract case that you can decide it, but the court's hands are tied. The court cannot exercise any of the procedural or ancillary rules that are necessary to actually afford relief to a plaintiff who files a breach of contract case because they say the rules of civil procedure have to be written in the contract or they're preempted or the statute of limitations or prejudgment interest has to be written in the contract or it's preempted. And we submit that simply absurd. Thank you. Okay, thank you. Thanks to both of you for your briefs and arguments today.